UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cr-00134-JMS-TAB |
| ) | |
| RICKY LEE RICKS, ) -01 | |
| ) | |
| Defendant. ) | |

**Entry Granting Motion for Compassionate Release**

On September 28, 2020, Defendant Ricky Lee Ricks filed a motion for compassionate release under § 603 of the First Step Act, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 35. The Court appointed counsel, and counsel filed a supporting memorandum on January 5, 2021. Dkt. 41. Mr. Ricks asks the Court to reduce his sentence to time served and to immediately release him. *Id.* The United States responded on January 27, 2021, dkt. 45, and Mr. Ricks filed a reply on February 3, 2021, dkt. 46. With the Court's permission, Mr. Ricks then filed a supplemental reply. Dkt. 48. At the Court's direction, the United States filed a surreply, dkt. 51, and Mr. Ricks filed a response to the surreply, dkt. 53. Thus, the motion for compassionate release is ripe for the Court's consideration. For the reasons explained in this Entry, the motion is **granted**.

**I. Background**

*A.    Conviction and Sentencing*

In 2018, the Court sentenced Mr. Ricks to 60 months of imprisonment and 8 years of supervised release after he pled guilty to one count of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2).  Dkts. 19, 30, 31. In pleading guilty, Mr. Ricks stipulated that he

downloaded thousands of images and videos of child pornography over the course of several years, including files showing videos of young children being sexually assaulted. Dkt. 19.

B.     *Current Incarceration and Medical Conditions*

Mr. Ricks is now 62 years old. He has been in the custody of the Bureau of Prisons ("BOP") since March 2018. Dkt. 41-2 at 2. Before his commitment to the BOP, he successfully completed about a year of pretrial release. Dkt. 7.

As of December 8, 2020, the BOP has given Mr. Ricks a low security classification and considers him to present a minimum risk of recidivism. Dkt. 41-8. He has used his time in the BOP well. He has maintained clean conduct through 3 years of incarceration. Dkt. 41-9. He has also enrolled in GED classes, dkt. 41-8, and worked as a painter, dkt. 41 at 25.

Mr. Ricks's anticipated release date (with good-conduct time) is June 13, 2022—a little over a year from now. Thus, with good-conduct time included, he has served more than 70% of his sentence. He will be eligible for home detention in December 2021—approximately 8 months from now. Dkt. 41-2 at 2.

Upon his release, Mr. Ricks plans to live with his sister in Waldron, Indiana. Dkt. 41 at 2. Mr. Ricks's other sister has submitted a letter of support. Dkt. 41-10. If he is released, Mr. Ricks plans to retire and use social security benefits to support himself. Dkt. 41 at 26. He also plans to spend time with his twenty-three-year-old son, who suffers from a serious skin condition and has had a difficult time coping with the recent death of his mother. *Id.* at 3, 26.

Mr. Ricks suffers from several medical conditions, including chronic kidney disease, hypertension, and anemia. Dkt. 45-2 at 14. He tested positive for COVID-19 on November 23, 2020. Dkt. 45-1. Although BOP medical records show that he was asymptomatic at the time, he claims that he suffered severe symptoms following his positive test, including shortness of breath,

a severe cough, and extreme fatigue which left him bedridden for more than a week. Dkt. 41 at 24; dkt. 46 at 1. BOP medical records show that medical staff considered his case of COVID-19 to be resolved on December 10, 2020. Dkt. 45-2 at 17. They also show that, on January 26, 2021, Mr. Ricks complained that he was winded more often than usual and that just walking from his unit to health services caused him to be out of breath. His oxygen saturation level was 98%, and his pulmonary and cardiovascular examinations were normal. The examining staff member noted, "[s]hortness of breath could be related to acute pulmonary process or it could be related to anemia." Dkt. 45-2 at 4. The staff member ordered a chest X-ray and blood tests. *Id.*

After Mr. Ricks's motion was fully briefed, his health worsened, leading the parties to submit supplemental briefing. Over the past 3 months, Mr. Ricks has been hospitalized 3 times. He was admitted to the hospital at the end of January for 4 days due to blood-loss anemia, which resulted in low hemoglobin levels. Dkt. 48-1. Medical providers performed an upper endoscopy, colonoscopy and pillcam study. *Id.* They found that he has "duodenal AVM"[1] and removed a polyp during the colonoscopy. *Id.* They gave him 2 units of blood, and he returned to prison. *Id.*

Mr. Ricks still complained of being tired and experiencing shortness of breath even after he returned back to prison, saying that it was hard to walk to "chow" and he had to take a break when walking from his unit to medical. *Id.* One month later, the prison did a CBC panel because he was still having issues and found that he had even lower hemoglobin than last time, so they sent him back to the hospital. *Id.* This time, Mr. Ricks was hospitalized for 3 days and received 3 units of blood. *Id.* Medical providers cauterized two areas in his duodenum and removed a polyp. *Id.* He returned to prison on March 8, 2021. *Id.*

---

[1] An AVM is an arteriovenous malformation, which is "an abnormal tangle of blood vessels connecting arteries and veins, which disrupts normal blood flow and oxygen circulation." *See* https://www.mayoclinic.org/diseases-conditions/arteriovenous-malformation/symptoms-causes/syc-20350544 (last visited Apr. 21, 2021).

3

Less than a month later, on March 29, 2021, Mr. Ricks reported to prison medical staff that he was experiencing shortness of breath, chest pressure and tightness, dark stools, and dark circles under his eyes. Dkt. 53-1. Given his history of blood-loss anemia, the prison transported him to the hospital. *Id.* He was there for one day. *Id.* The records before the Court do not reveal whether he received any treatment, but the hospital diagnosed him with chronic bronchitis and black stool due to blood. *Id.* Upon his return to the prison, he stated that he still felt like he had trouble breathing at times. *Id.* The records reflect that he was scheduled to have follow-up appointments with a cardiologist and a gastroenterologist during the first week of April, but the parties have not provided any updated records. *Id.*

C.  *COVID-19 at FCI Ashland*

Mr. Ricks is currently incarcerated FCI Ashland. As of April 21, 2021, the BOP reports that no inmates or staff at FCI Ashland have current cases of COVID-19; it also reports that 320 inmates and 70 staff members at FCI Ashland have recovered from the virus and that 6 inmates at FCI Ashland died from the virus. *See* https://www.bop.gov/coronavirus/ (last visited Apr. 21, 2021). In addition, the BOP reports that 129 staff members and 484 inmates at FCI Ashland have been fully vaccinated against COVID-19. *Id.* Mr. Ricks is one of those inmates. He received his first dose of the Pfizer vaccine on February 11, 2021, and his second dose of the vaccine on March 4, 2021. Dkt. 51-3.

## II. Discussion

In the initial briefing, Mr. Ricks argued that "extraordinary and compelling reasons" support a sentence reduction in his case within the meaning of § 3582(c)(1)(A)(i) because he is still experiencing shortness of breath and might have suffered heart damage after his bout with COVID-19. Dkt. 41. He also contended that he suffers from medical conditions (including

4

advanced age, hypertension, chronic kidney disease, heart failure and obesity) that increase his risk of experiencing severe symptoms if he contracts COVID-19 again. *Id.* In his supplemental submissions, he further argues that his health has worsened and that extraordinary and compelling reasons support release because he has serious physical or medical conditions that substantially diminish his ability to provide self-care within the meaning of the policy statement in U.S.S.G. § 1B1.13, Application Note 1(A)(ii)(I). Dkts. 48, 53. He further argues that a reduction of his sentence would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. Dkts. 41, 46.

In response, the United States admits that Mr. Ricks has exhausted his administrative remedies as required by § 3582(c)(1)(A). Dkt. 51 at 17. It argues, however, that Mr. Ricks's medical conditions do not present extraordinary and compelling reasons warranting release because he has recovered from COVID-19 and been vaccinated against the virus, therefore eliminating any claim that he should be released to protect him from the pandemic. *See generally* dkt. 51. It also argues that Mr. Ricks would be a danger to the community if released and that the sentencing factors in § 3553(a) do not favor release. *Id.*

The general rule is that sentences imposed in federal criminal cases are final and may not be modified.  18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C.

6

§ 3142(g)." U.S.S.G. § 1B1.13(2).  Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in

§ 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

A.   *Extraordinary and Compelling Reasons*

The Court concludes that Mr. Ricks has shown an extraordinary and compelling reason warranting release in this case.[2] At the outset, the Court notes that the possibility that Mr. Ricks might be reinfected with COVID-19 does not constitute an extraordinary and compelling reason warranting release because he has now been fully vaccinated against the virus. *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-03, dkt. 274 (S.D. Ind. Feb. 16, 2021). That conclusion does not, however, end the analysis because Mr. Ricks relies on more than just his risk of being reinfected with COVID-19. He also contends that his deteriorating medical condition limits his

---

[2] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court would typically consider the rationale provided by Mr. Ricks's warden in denying Mr. Ricks's administrative request for relief. In this instance, however, Mr. Ricks filed his request, and the warden responded, before he had contracted COVID-19 and before his most recent hospitalizations. Dkt. 41-6. Thus, the warden's decision provides little guidance to the Court's analysis.

ability to provide self-care in the prison environment and thus qualifies as extraordinary and compelling. The Court agrees.[3]

Over the last 3 months, Mr. Ricks has been hospitalized 3 times. He has required treatment for blood-loss anemia on multiple occasions, and he continues to complain of shortness of breath. Mr. Ricks asserts—and the United States does not dispute—that he becomes winded just walking to "chow" and that he has to take breaks when walking from his unit to medical. Despite these 3 recent hospitalizations, Mr. Ricks's condition does not appear to be improving. Instead, he is stuck in a cycle where the BOP sends him to the hospital, the hospital attempts to control his internal bleeding, the hospital releases him, but then the bleeding recurs, and Mr. Ricks's condition deteriorates until he requires hospitalization again. At this point, Mr. Ricks's ability to function in the prison environment has been seriously compromised, and the BOP does not appear to be adequately able to manage his medical conditions. In these circumstances, extraordinary and compelling reasons support a reduction in sentence. *Cf. United States v. McGraw*, No. 2:02-cr-18-JMS-CMM-01, Dkt. 88 (S.D. Ind. May 9, 2019); *United States v. Meriwether*, No. 3:12-cr-4-RLY-CMM-01, Dkt. 173 (S.D. Ind. July 9, 2020).

---

[3] Mr. Ricks's counsel argues that his circumstances qualify as "extraordinary and compelling" under the policy statement in U.S.S.G. § 1B1.13, Application Note 1(a)(ii)(I), because he suffers from a serious medical condition that substantially diminishes his ability to provide self-care in the prison environment. Dkts. 48, 53. The Court need not decide whether Mr. Ricks meets the requirements of Application Note 1(a)(ii)(I) because the Court is not bound by the policy statement and possesses broad discretion to determine what qualifies as "extraordinary and compelling" under § 3582(c)(1)(A)(i). *See Gunn*, 980 F.3d at 1180–81. Likewise, the parties disagree about whether Mr. Ricks's current medical issues are related to his COVID-19 infection or not, with Mr. Ricks's counsel arguing that he appears to be suffering "long-haul" symptoms of COVID-19. The Court need not resolve that dispute. Regardless of whether Mr. Ricks's current medical conditions were caused by or are related to his bout with COVID-19, the Court concludes that his conditions rise to the level of extraordinary and compelling reasons warranting release.

B.     *Danger to any Other Person or the Community*

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the Court must consider in determining whether a defendant should be detained pending trial. These same factors guide the Court's release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Ricks's crime was serious. In pleading guilty, he stipulated that he downloaded thousands of images and videos of child pornography over the course of several years, including files showing videos of young children being sexually assaulted. The Court finds, however, that Mr. Ricks's release from incarceration to his 8-year term of supervised release with additional conditions would not threaten the safety of any person or the general public. This case represents

10

Mr. Ricks's first felony conviction, and he has only one previous misdemeanor conviction. Dkt. 27 at 7. He successfully completed nearly a year on supervision while on pretrial release and has completed 3 years of incarceration with clean conduct. He has used his time in prison well, enrolling in GED classes and maintaining employment. Tellingly, even the BOP rates him as presenting a minimum risk of recidivism. Upon release, Mr. Ricks plans to live with his sister, who will provide him with housing.  In addition, Mr. Ricks hopes to reconnect with his adult son. The support of his family should help Mr. Ricks transition back to being a law-abiding member of the community.

The record does not reflect that Mr. Ricks has completed sex offender treatment, and this gives the Court some pause. Nonetheless, it concludes that requiring Mr. Ricks to serve the first year of his supervised release on home detention will alleviate threats to the safety of the community. Further reducing those threats, the Court will require Mr. Ricks to serve his period of home detention with GPS monitoring until he has completed sex offender treatment at the direction of his probation officer.  If he is unable to complete sex offender treatment due to his health or the pandemic, US Probation can propose an appropriate medication of his conditions of supervision.

Accordingly, pursuant to § 3142(g), the Court finds that Mr. Ricks does not presently pose a danger to any person or the community if his sentence is reduced to time served with the additional conditions described above.

C.   *Section 3553(a) Factors*

Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

11

>    **(2)** the need for the sentence imposed—
>       **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>       **(B)** to afford adequate deterrence to criminal conduct;
>       **(C)** to protect the public from further crimes of the defendant; and
>       **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>    **(3)** the kinds of sentences available;
>    **(4)** the kinds of sentence[s] and the sentencing range established for--
>       **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>    **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
>    **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>    **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As recognized above, Mr. Ricks's conduct in this case was serious. But Mr. Ricks has served more than 3 years and more than 70% of his sentence, representing a serious sanction that appropriately recognizes the seriousness of his conduct. He has maintained clean conduct in the BOP and taken steps to rehabilitate himself, suggesting that further incarceration is not needed to protect the public from future crimes he might commit. He also suffers from a number of serious medical conditions that the BOP has not yet been able to fully manage and that have reduced his ability to function in the correctional setting. Finally, Mr. Ricks will be eligible for home detention in about 8 months, and he is due to complete his sentence in just over a year. In these circumstances, further incarceration would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2).

When viewed in light of Mr. Ricks's deteriorating health, the Court finds that the § 3553(a) factors weigh in favor of reducing Mr. Ricks's sentence to time served. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating

motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence). Under the facts presented by this case, keeping Mr. Ricks imprisoned for another 8 months would be more than what is necessary to provide just punishment for Mr. Ricks's offenses.

### III. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Ricks's sentence and his immediate release from imprisonment, that Mr. Ricks does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Ricks's motion for compassionate release, dkt. [35], **ORDERS** that Mr. Ricks's sentence of imprisonment be reduced to **time served as of April 26, 2021,** and further **ORDERS** the BOP to release Mr. Ricks by **4:00 p.m. on April 26, 2021.** No later than **12:00 p.m. on April 23, 2021**, counsel for the United States is **ORDERED** to do the following: (1) transmit the AO248 Order to Mr. Ricks's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 Order has occurred.

The term of supervised release remains 8 years. The terms of supervised release stated in the Judgement imposed on February 1, 2018 and docketed on February 5, 2018 (dkt. 31) remain the same with the addition of the following conditions: The first year of Mr. Ricks's supervised release will be served under conditions of home detention with permission to leave his residence with his probation officer's approval. While on home detention, Mr. Ricks will be subject to GPS monitoring until he completes sex offender treatment as directed by his probation officer. Mr.

Ricks is ordered to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

**IT IS SO ORDERED.**

Date: 4/22/2021

*[signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel